Filed 12/17/21  P. v. Davis CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN EARL DAVIS,<br><br>    Defendant and Appellant. | C092962<br><br>(Super. Ct. No. 51318) |

In 1978, defendant Jonathan Earl Davis was found not guilty by reason of insanity (NGI) of murder.  Defendant appeals from the trial court's order extending his commitment to a state hospital under Penal Code section 1026.5, subdivision (b)(1) (statutory section references that follow are to the Penal Code unless otherwise stated). He contends the state did not show that he currently presented a substantial danger of physical harm to others and suffered from a volitional impairment rendering him dangerous beyond his control.  We affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was committed to the state hospital in 1978 after being found NGI of murder.  In May 2020, the People filed a petition to extend defendant's NGI commitment pursuant to section 1026.5.  The petition attached a recommendation and affidavit signed

1

by Dr. Carolina Klein, medical director of Napa State Hospital (NSH). Dr. Klein requested an extension of the commitment, declaring that "in his present status and condition, by reason of a mental disease, defect or disorder, [defendant] represents a substantial danger of physical harm to others."

Defendant's court trial occurred in September 2020, after which the parties submitted briefing.

Dr. Lei Wei, a psychiatrist at NSH, testified that NSH has a three-level system for classifying patients. Defendant is in the lowest level—the level for patients with the lowest ability to function and perform activities of daily living. Generally, patients in the lowest level are severely ill. Dr. Wei explained that defendant suffers from schizophrenia and is the subject of an involuntary medication order because he lacks the capacity to make medication decisions for himself. Defendant suffers from some delusional beliefs, including the belief that he did not commit the underlying offense and the belief that he is not being given real medications. Defendant also exhibits negative symptoms of schizophrenia, such as a lack of emotional response. Generally, people who have negative symptoms have pretty severe psychotic disorders. Dr. Wei did not believe that defendant would voluntarily take medications if released because he stated he does not need medications. If defendant failed to take his medications, Dr. Wei opined he would most likely relapse into a full psychotic state with hallucinations, delusions, and paranoia.

Dr. Wei opined that, because of defendant's mental disorder, he posed a substantial danger of physical harm to others and had serious difficulty controlling his dangerous behavior and posed a high risk for relapse and violence. Dr. Wei explained that when people like defendant with psychotic disorders relapse, it is typical for them to have paranoia and/or delusions such as feeling they are under God's command. They can have auditory or visual hallucinations that tell them to hurt themselves or others. This is highly dangerous and is a predisposing factor for violence. Dr. Wei observed defendant's condition was not in full remission, another high-risk factor that increases dangerousness.

2

Dr. Wei explained that a small percentage of patients are not fully responsive to even the most aggressive medication regimen, and she saw defendant falling into that group. Defendant takes an antipsychotic medication used to treat people who are resistant to other antipsychotic medications. Defendant had never participated in the conditional release program (CONREP) because CONREP requires patients to be in full remission, as Dr. Wei described it.

Dr. Mahalet Tekeste was a psychologist at NSH, and she testified she agreed with defendant's diagnosis of schizophrenia. Defendant exhibited three main symptoms of schizophrenia: disorganized behavior, disorganized speech, and psychotic beliefs. Despite taking medications in the hospital setting, defendant still displays symptoms of mental illness. Dr. Tekeste was concerned that if defendant stopped taking medication he might decompensate and become violent. Dr. Tekeste explained it is important for mentally ill people to be able to recognize signs of mental illness so that when they decompensate they can get help before they behave in a violent manner, but defendant has told Dr. Tekeste that he does not have a mental illness and believes there is no point in taking medication.

Dr. Tekeste noted it was because of paranoid delusions that defendant committed the underlying offense of murder. Dr. Tekeste performed a violence risk assessment (HCR-20) on defendant. Dr. Tekeste concluded that defendant was a low risk for violence in the hospital but a high risk for violence in the community. Defendant lacks insight into his mental illness and he continues to present symptoms of mental illness despite taking medication and attending group therapy. Dr. Tekeste opined defendant had not acted out at the hospital because he is medicated, the hospital is highly structured, and there is a lack of daily stressors. Dr. Tekeste concluded that defendant would pose a substantial risk in the community.

Defendant does not understand that he has a mental illness and he does not want to take medication. It is likely he would decompensate if not medicated. If he

3

decompensates, there is a risk of violence because he might experience symptoms similar to those he experienced at the time of the underlying offense. Dr. Tekeste opined that defendant's schizophrenia "played a primary role" in his offense. Finally, defendant has not developed a substantial relapse prevention or release plan.

Defendant testified on his own behalf. He denied committing any crime, and he specifically denied committing a murder. Defendant denied having a mental illness and admitted that he took medication simply to avoid involuntary administration.

On October 22, 2020, the superior court extended defendant's commitment for two years, to May 30, 2022. The court noted that defendant refuses to voluntarily take medication and denies committing the homicide. The court acknowledged he has been nonviolent in the recent past, but this was due to medication and the structured environment of the hospital. For example, staff administer medications and de-escalate confrontations.

The court also distinguished *People v. Redus* (2020) 54 Cal.App.5th 998, 1002 (*Redus*) because there, Redus had participated in CONREP and had progressed to conditional release. In contrast, defendant here was not suitable for community release because he failed to acknowledge involvement in murder, denied he was mentally ill, and did not believe he needed medication. For these reasons, the Drs. Wei and Tekeste testified that defendant's delusions are not in remission. The court had no faith that defendant would take medications on his own. He would be ill-prepared to report to mental health personnel any paranoid, delusional, or homicidal thoughts, as Redus was able to do. Accordingly, the court granted the petition to extend the commitment.

Defendant timely appealed.

## DISCUSSION

Defendant contends substantial evidence did not support the trial court's order extending his commitment.

4

"Under section 1026.5, subdivision (b)(1), '[a] person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.' The last element also requires proof that the person has serious difficulty controlling his dangerous behavior. [Citations.] [¶] We review an order to extend commitment under section 1026.5 by applying the substantial evidence test, examining the entire record in the light most favorable to the order to determine whether a rational trier of fact could have found the requirements of the statute satisfied beyond a reasonable doubt. [Citation.] A single psychiatric opinion that a person is dangerous because of a mental disorder constitutes substantial evidence to justify the extension of commitment." (*People v. Williams* (2015) 242 Cal.App.4th 861, 872.)

In this case, Drs. Wei and Tekeste each gave a psychiatric opinion required by the statute that defendant is currently dangerous because of a mental disorder, schizophrenia, if not undergoing treatment and taking his medication as prescribed. Dr. Wei opined that defendant's condition was not in full remission, a high-risk factor that increases dangerousness. Dr. Tekeste opined that, once removed from a strictly controlled program such as the state hospital's program, defendant was unlikely to take his medications and at high risk for decompensation and violence. Defendant himself testified that he did not believe he had committed any crime, including the murder underlying his commitment, did not believe he was mentally ill, and did not wish to take his medications.

Defendant cites his recent good behavior in the strictly controlled hospital setting as evidence that he is not currently dangerous. But the fact that a defendant can behave well in a controlled environment does not establish that he would not have substantial difficulty in controlling his dangerous behavior if released to an uncontrolled environment. (See *People v. Williams, supra*, 242 Cal.App.4th at p. 875.)

Dr. Tekeste concluded based on the violence risk assessment that defendant was a low risk for violence in the hospital *but* a high risk for violence in the community. Similarly, Dr. Wei opined that defendant posed a substantial danger of physical harm to others and had serious difficulty controlling his dangerous behavior and posed a high risk for relapse and violence. This is substantial evidence supporting the extension of defendant's commitment.

Defendant relies extensively on *Redus, supra*, 54 Cal.App.5th 998. There, Redus was committed to the state hospital in 1975, after being found NGI of murder, and he was 73 years old at the time of his court trial on extending his commitment in 2019. (*Id.* at p. 1001.) Similarly, defendant was committed to the state hospital in 1978 after being found NGI of murder and he was 63 at the time of his 2020 recommitment. Also similar to defendant, Redus had no history of violence during his long hospital commitment. (*Id.* at p. 1013.)

However, in contrast to the case at hand, in *Redus*, a psychologist testified on *Redus*'s behalf. (*Id., supra,* 54 Cal.App.5th at pp. 1006-1007.) Redus admitted to the psychologist that he was mentally ill and had expressed that it was critical to take his medication. (*Ibid.*) The psychologist opined that Redus did not have serious difficulty controlling his dangerous behavior and did not believe that Redus posed a substantial danger of harm to others. (*Id.* at p. 1007.) The psychologist believed that Redus would continue to take his medications even in an unsupervised environment. (*Ibid.*) The psychologist was not concerned about Redus's potential for violence, commenting that Redus could probably be pushed over with one finger. (*Ibid.*) In contrast, here, no mental health expert testified on defendant's behalf that he did not pose a danger of harm to others.

Further, unlike *Redus*, defendant has not acknowledged his mental illness or his need to take medication. In contrast to *Redus*, defendant has never worked his way up to CONREP. (See *id., supra,* 54 Cal.App.5th at p. 1012.) Finally, both experts who

testified in this case agreed that if released, defendant would pose a risk of violence in the community. For all these reasons, we conclude that *Redus* is distinguishable.

Finally, defendant criticizes the expert testimony implying that he must be in full remission even for conditional release because such a standard would require him to remain committed for the rest of his life.

This argument mischaracterizes the testimony. Dr. Wei observed defendant's condition was not in full remission but noted this was simply a risk factor that increases dangerousness. Dr. Wei clarified his testimony about "full remission," stating that CONREP requires patients to be in full remission, as Dr. Wei described it. Dr. Tekeste mentioned remission only when asked whether there was a scale of severity for schizophrenia, stating that there is no such scale and doctors note only whether the patient is in remission. She noted defendant was not in remission. Neither expert relied on defendant's lack of remission exclusively or primarily in determining he was currently dangerous.

We conclude defendant has shown no error in the trial court's ruling.

DISPOSITION

The order extending defendant's commitment is affirmed.

_____
HULL, J.

We concur:

_____
RAYE, P. J.

_____
RENNER, J.

7